IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ROSALIE BUNNELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 06-426-KI |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | OPINION AND ORDER |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

KING, District Judge:

## **INTRODUCTION**

Plaintiff Rosalie Bunnell brings this action for judicial review of a final decision of the

Commissioner of Social Security denying her application for disability insurance benefits (DIB)

under Title II of the Social Security Act.  This court has jurisdiction under 42 U.S.C. § 405(g).  The

Commissioner's decision is affirmed and the case dismissed.

## BACKGROUND

Bunnell was born on May 21, 1944.  Tr.  76[1].  She completed tenth grade and worked as a sorter in the mail room of a clearinghouse.  Tr.  109.  Bunnell stopped working in 1989 when the business closed and her health condition deteriorated.  Tr.  208.  Bunnell filed for DIB in October, 1989, and her application was denied initially and on reconsideration.  Following a hearing, an Administrative Law Judge (ALJ) issued a decision on December 6, 1991, finding Bunnell was not disabled. She did not appeal that decision.  Bunnell filed another application on October 6, 1993, alleging disability from December 7, 1991,which was denied.  An administrative hearing was held on December 16, 1996, and the ALJ found  Bunnell satisfied the insured status requirements for a claim under Title II through December 31, 1994, and must establish that she was disabled on or before that date to prevail on her DIB claim.  42 U.S.C. § 423(a)(1)(A).  *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).  The ALJ issued an opinion on January 10, 1997, finding  Bunnell was not disabled and she appealed to this court.

This court ordered a remand based on the stipulation of the parties on February 11, 1999. Supplemental hearings were held before an ALJ who issued an opinion on March 3, 2000, finding Bunnell was not disabled.  After appeal to this court, a remand was ordered on August 29, 2001, for further proceedings.  Bunnell appealed this decision to the Ninth Circuit Court of Appeals, which affirmed this court's decision.  *Bunnell v. Barnhart,* 336 F. 3d 1112 (9th Cir. 2003).   An administrative hearing was held on November 21, 2005, and the ALJ issued an opinion on December 1, 2005, finding Bunnell was not disabled which is the final decision of the Commissioner.

---

[1]  Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §§ 423(d)(1)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. An impairment is severe if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1521. The burden to show a medically determinable severe impairment is on the claimant. *Bowen v. Yuckert*, 482 U.S. at 146. Although the ALJ found Bunnell has the medically severe impairment of Undifferentiated Somatoform Disorder, she alleges the ALJ improperly determined her other impairments were not severe and did not adequately assess the combination of her impairments.

At step three, there is a conclusive presumption that the claimant is disabled if the Commissioner determines that the claimant's impairments meet the duration requirement and meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.* at 141; 20 C.F.R. § 404.1520(d). The criteria for these listed impairments are enumerated in 20 C.F.R. Pt. 404, subpt. P, app. 1 (Listing of

Impairments).  Bunnell challenges the ALJ's finding that her impairments do not meet or equal a

listing.  If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's

residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained work-

related activities the claimant can still do on a regular and continuing basis, despite the limitations

imposed by his impairments.  20 C.F.R.  § 404.1545, Social Security Ruling (SSR) 96-8p.  Bunnell

challenges the ALJ's determination of her RFC.  At step four, the Commissioner must determine

whether the claimant retains the RFC to perform work she has done in the past.  If the ALJ

determines that she retains the ability to perform her past work, the Commissioner will find the

claimant not disabled. 20 C.F.R. § 404.1520(f).  Bunnell challenges the ALJ's determination she was

able to perform her past relevant work.

## THE ALJ's FINDINGS

The ALJ found Bunnell had the severe impairment of Undifferentiated Somatoform

Disorder[2].  Tr. 716.  He determined Bunnell's vision complaints, fibromyalgia, depression, and foot

---

[2]"Diagnostic criteria for 300.82 Undifferentiated Somatoform Disorder:
A.  One or more physical complaints (e.g., fatigue, loss of appetite, gastrointestinal or urinary complaints).
B.  Either (1) or (2):
      (1)  after appropriate investigation, the symptoms cannot be fully explained by a known general medical condition or the direct effects of a substance (e.g., a drug of abuse, a medication).
      (2)  when there is a related general medical condition, the physical complaints or resulting social or occupational impairment is in excess of what would be experienced from the history, physical examination, or laboratory findings.
C.  The symptoms cause clinically significant distress or impairment in social, occupational, or other important areas of functioning.
D.  The duration of the disturbance is at least 6 months.
E.  The disturbance is not better accounted for by another mental disorder (e.g., another Somatoform Disorder, Sexual Dysfunction, Mood Disorder, Anxiety disorder, Sleep disorder, or Psychotic Disorder).
F.  The symptom is not intentionally produced or feigned (as in factitious Disorder or

problems were not a medically determined impairments prior to her last date insured. Tr. 714-715. The ALJ determined Bunnell's irritable bowel syndrome (IBS), obesity, and small disc protrusion did not result in any work-related functional limitations and were not severe impairments. *Id.* He adopted the opinion of the medical expert (ME), Dr. McDevitt, that Bunnell's condition did not meet or or equal the criteria for a listed impairment enumerated in 20 C.F.R. Pt. 404, subpt. P, app. 1 (Listing of Impairments). Tr. 716. The ALJ found Bunnell retained the RFC to perform sedentary work. Tr. 719. He noted her past relevant work as performed was sedentary and did not require the "performance of tasks" precluded by her RFC. The ALJ determined Bunnell could return to her past relevant work and was not disabled within the meaning of the Social Security Act. Tr. 720.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for resolving conflicts in the medical evidence and determining credibility. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson v. Commissioner of Soc. Sec. Admin.,*

Malingering). The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 492 (4th ed. 2000).

359 F.3d at 1193.  The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation."  *Andrews v. Shalala*, 53 F.3d at 1039-1040.

## DISCUSSION

Bunnell asserts the ALJ erred in finding she does not have severe impairments in addition to her Undifferentiated Somatoform Disorder.  She contends the ALJ failed to properly consider the combination of all her impairments.  Bunnell further asserts the ALJ erred in failing to find she met the criteria for the listing for Somatoform Disorder.  She further contends the ALJ did not properly consider the opinion of her treating physician.  Bunnell also asserts the ALJ failed to properly assess the lay witness testimony and her credibility.  She also contends the ALJ improperly determined her RFC and ability to do past relevant work.  The Commissioner responds that any errors committed by the ALJ are harmless and his opinion was based on substantial evidence in the record.

## I.    Medical Background

Dr. Ramsthel was Bunnell's primary care physician between 1974 and 1998.  Tr.  594.  In 1976, he referred Bunnell to Dr. Zivin, a neurosurgeon, following a motor vehicle accident.  Tr.  399.  Dr. Zivin concluded her most important problem was "a rather severe anxiety tension state which has been triggered by" the accident.  Tr.  400.  In 1987, Dr. Ramsthel referred Bunnell to Dr. Duff, an orthopedist, for chronic back pain.  Tr.  135.  Dr. Duff diagnosed early degenerative disc disease and postural low back strain.  He noted there were physical and psychological factors perpetuating her back pain which would be improved by weight loss, back exercises, and resolving personal problems.  Tr.  136.  Tests conducted in 1988 indicated Bunnell's complaints of leg pain were not caused by thrombosis.  Tr.  145-146.  In August of 1989 Bunnell had a CT scan of the lumbar spine. The radiology report noted no abnormalities other than a small disc protrusion.  Tr.  147.

Dr. Dordevich conducted an examination of Bunnell for the state agency in December, 1989. Tr. 149-154. He diagnosed chronic pain in the low back, neck, and shoulders; depression and anxiety reactions. Dr. Dordevich noted no abnormalities, swelling, tenderness, trigger points, or limited range of motion. He did note "excessive" tenderness in the muscles of the lower back. Tr. 152. Dr. Upjohn, a state agency consultant, found no objective evidence for standing less than two hours and a probable functional overlay to her complaints. He determined her RFC was at a light level of exertion. Tr. 127-134. In May, 1990, Dr. Patton, a state agency consultant, agreed with Dr. Upjohn's assessment. Tr. 119-126.

Dr Glaus conducted a psycho-diagnostic examination of Bunnell for the state agency on December 21, 1990. Tr. 201-204. He diagnosed Undifferentiated Somatoform Disorder with a Global Assessment of Functioning (GAF) of 55[3]. Dr. Glaus noted Bunnell was cognitively and emotionally capable of adequate functioning in a relatively structured and routine setting, but had significant focus on somatic impairments and limitations to functioning. He noted her low motivation to obtain employment and recommended a vocational placement evaluation with potential on-the-job training or work hardening program. Tr. 203-204. Dr. Rethinger, a state agency consulting psychologist, developed an MRFC for Bunnell in January, 1991, and noted her Somatoform Disorder did not meet or equal a listing and caused only slight limitations. Tr. 172-184. In February, 1991, Dr. Gustafson, a state agency consultant, assessed chronic low back pain

---

[3]The GAF is a scale from 1-100, in ten point increments, that is used by clinicians to determine the individual's overall functioning. A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers) The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000).

and right arm discomfort, with no objective findings to support her complaints of pain. Tr. 198-200.

He noted no explanation for her discomfort other than chronic anxiety. Tr. 200. Dr. Gustafson

noted Bunnell stated she had intermittent diarrhea either daily or every other day. Tr. 199.

Dr. Ramsthel referred Bunnell to Dr. Gerry in May, 1991, after she was involved in another

minor motor vehicle accident. Dr. Gerry believed most of her pain was myofascial in origin and was

exacerbated by lack of sleep. He also noted multiple tender points in her upper trunk area and

prescribed amitriptyline and sleeping medications. Tr. 406-409. In August, 1991, Dr. Ramsthel

wrote a letter describing Bunnell's medical history. At the end of the letter, Dr. Ramsthel stated,

> In summary, Mrs. Bunnell is a woman who has considerable pain in her head, neck,
> spine and low back and legs. She also has chronic abdominal pain. All of her pain
> has been of a chronic and recurrent nature much of which cannot be assigned an
> anatomical or pathological basis. Much of her pain is exacerbated by her chronic
> anxiety state. Because of the amount of pain that she seems to be having she seems
> to be disabled for any type of gainful employment. She has been seen by a host of
> medical specialists who all agree that most of her problems have a strong functional
> overlay.

Tr. 226.

Bunnell was treated by Dr. Ramsthel on August 24, 1992. Tr. 348. He noted she went to

urgent care with a cut finger. Dr. Ramsthel advised her to leave the dressing off but to "continue to

wear the aluminum cage to protect her finger during daylight hours of child care." *Id.* In March,

1993, Dr. Ramsthel noted Bunnell complained of right groin pain, fatigue, heart flutters, and had a

"positive jump sign" on her back. Tr. 347. He noted, "she is under considerable stress taking care

of her granddaughter, as well as the stress with her husband." *Id.* Dr. Ramsthel stated further, "I am

impressed that this lady has fibromyalgia." *Id.* He found her blood tests were normal and gave her

a prescription for Elavil.

Dr. Harvey examined Bunnell for the state agency in December, 1993, for her allegations of "'colon disease', bad back, high blood pressure, 'muscle disease', 'bad right arm' arthritis of the neck, shoulder and jaws, plus 'blurred vision.'" Tr. 334. He stated he was unable to substantiate her subjective complaints of pain and had no comment on her gastrointestinal complaints. Tr. 336. Dr. Ramsthel's notes indicate the state agency contacted his office in January, 1994 regarding Bunnell's wheelchair use. Tr. 247. The notes state that Dr. Ramsthel had not prescribed a wheelchair, but stated she may need one in the future. *Id.*, Tr. 345. In a letter to Pacific Care on January 20, 1995, Dr. Ramsthel again noted Bunnell's medical history, including the removal of a fatty lipoma in the right upper arm. Tr. 341-342. He noted her complaints of weakness and pain in the arm are unexplainable. Dr. Ramsthel stated he wrote a letter stating she needed a wheelchair for travel in 1991. He also reiterated, "Her perception of her pain . . .is such that she does not feel that she is able to work at gainful employment, and I wrote a letter in 1980 that she was physically disabled for all gainful employment." Tr. 341.

Dr. Reed examined Bunnell for vision problems in April, 1995. and noted, "I cannot find a reason for her progressive loss of vision." Tr. 410. He found no abnormalities and determined she had corrected vision of  OD 20/40+ and OS 20/40- 20/40. *Id.* Dr. Ramsthel wrote to the state agency on August 25, 1995, stating

> . . . this patient has considerable functional overlay, but also has some findings of fibromyalgia. She has chronic depression and obesity, chronic back pain and irritable bowel syndrome which causes her a great deal of stress.

I do not feel that she could work for any length of time, due to the various complaints, plus she has a very low stamina. The patient is unable to stand, lift, walk or carry objects over ten pounds for any period of time.

Tr. 337. Dr. Ramsthel's files contain a letter from Dr. Williams, a gastroenterologist, dated September 15, 1995. She noted Bunnell's diarrhea was successfully treated with Prilosec, but that Bunnell had refused an endoscopy and other tests. Dr. Williams offered the tests for free, but stated Bunnell was afraid of sedation. Tr. 411. Dr. Ramsthel's notes from May, 1996 indicate chronic depression, fibromyalgia, low back pain, hypertension, IBS, and a prescription for Zoloft. Dr. Ramsthel completed a checklist for Bunnell's attorney dated November, 1996. He signed it in December, 1996, and noted she had been unable to work since September, 1995. Tr. 424.

Bunnell began treatment with Dr. Benz for posterior tibial tendinitis in September, 1996. He noted she owned and "cleaned up" a barbershop, had medications for blood pressure and low back pain, walked with an antalgic limp, and had normal x-rays. Dr. Benz gave her arch supports and noted she was disabled from September, 1996 to January 1, 1997, due to the tendinitis. Tr. 413-416. In October, 1996, Dr. Benz gave Bunnell a shortleg walker to immobilize her ankle and administered lidocaine injections. Tr. 417. He noted she was having some difficulty walking and her insurance company had denied payment for a wheelchair. In November, 1996, Dr. Benz noted she continued to complain of more pain, even when using the boot and crutch. Tr. 434. He opined she was developing a tibial tendon rupture for unknown reasons and gave her a prescription for a wheelchair and work release. *Id.*

In December, 1996, Dr. Benz noted Bunnell had not made a lot of progress but she admitted having problems staying off her feet. He discussed decompression surgery on the tibial tendon, and as she was apprehensive about surgery, she promised to stay off her feet. Tr. 593. Bunnell had the surgery in 1997, and Dr. Benz noted in May, 1997, that Bunnell used the wheelchair as a walker and needed better shoes. Tr. 586. Bunnell's physical therapist noted in June, 1997, that her gait was

within normal limits, her range of motion was normal, her limping was resolved, and she no longer used a wheeled walker. Tr. 581. Dr. Benz noted in June, 1997, that two months post operation she was a little too active and had "resumed a lot of her previous activities." Tr. 585. In July, 1997, Dr. Benz noted swelling from being on her feet too much and in August, 1997, stated she could be on her feet half of the day. Tr. 582-584. Dr. Ramsthel's last treatment notes for Bunnell indicate he forwarded her records to the King Road Clinic stating she was last examined by him in April, 1998, after she fell off a treadmill and had some shoulder pain. Tr. 594.

## II.    Step Two Determination of Impairments

Bunnell contends the ALJ erred in finding she did not severe impairments of IBS, lumbar disc disease, and obesity, and did not have an impairment of fibromyalgia. She further contends the ALJ improperly evaluated the severity of the combination of her impairments. At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. If there is no finding of severe impairment, the Commissioner will find the claimant "not disabled" without continuing the remaining steps of the sequential process. 20 C.F.R.§ 404.1520(a)(4)(ii); SSR 85-28. Bunnel bears the burden of proving that her impairments are severe. 20 C.F.R. § 404.1512; *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001). The ALJ found Bunnell has a severe impairment of Undifferentiated Somatoform Disorder and noted he must consider the combined effect of all her impairments, severe and nonsevere, in the remaining steps of the disability analysis. Tr. 714. 20 C.F.R. § 404.1523. The issue is whether the ALJ properly assessed whether there were functional limitations from any impairment or combination of impairments that affected Bunnell's ability to work during the enclosed period of December 7, 1991, to December 31, 1994.

### A.  Irritable Bowel Syndrome (IBS)

Bunnell alleges the ALJ erred by failing to find her IBS a severe impairment.  Dr. Ramsthel diagnosed Bunnell with IBS in 1976 and treated her with anticholinergics.  Tr.  225, 341.  Bunnell worked from 1985 to 1989 with this condition.  She testified that in 1994 she spent half of every day in the bathroom.  In our 2001 remand opinion, this court noted,

> This court cannot ascertain when in 1994 this condition expressed itself or how long it lasted.  Neither the lay witnesses nor Dr. Ramsthel offered any indication as to how long Bunnell may have suffered from such extensive symptomology.  In fact, neither Bunnell's husband and sisters nor Dr. Ramsthel describe this seemingly obvious and significant limitation.

Tr.  745.  At the December 16, 1996, hearing, Bunnell's sisters testified Bunnell vomited every day or every other day.  Tr.  69, 73.  Bunnell testified at that hearing she vomited "sometimes three, four times a week.  Sometimes just once a week."  Tr.  58.  When asked if she had a problem with diarrhea, she responded, "Sometimes seven days a week or sometimes three and four days a week."  Tr.  530.  Bunnell testified at the November 15, 1999, hearing that she spent half the day in the bathroom in 1994.  Tr.  463.  At the hearing on November 21, 2005, Bunnell testified she began spending half of the day in the bathroom beginning in 1989 "until now, still, it goes on."  Tr.  825.

The ALJ noted there were no records from the enclosed period of December 7, 1991, to December 31, 1994, indicating symptoms of IBS or medical reports of spending excessive time in the bathroom.  Tr.  714.  He also noted that although she testified in 2005 that she still spends half the day in the bathroom, Dr. Williams reported in September, 1995, that Prilosec resulted in a cessation of diarrhea.  *Id.*  Bunnell cites Dr. Harvey's examination of December, 1993 as noting a gastrointestinal complaint.  Dr. Harvey referred to her "subjective colon disease" at the beginning of his report.  He noted,

> I am unable to substantiate her subjective complaints as to pain. I am not able to really comment on her gastrointestinal complaint. She probably does receive relief with Tagamet, but I have no objective evidence to comment on her gastrointestinal status. She certainly exhibits no problems with malnutrition and weight loss would appear to be desirable.

Tr. 336. An impairment is not severe if it does not significantly limit the physical ability to do basic work activities, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. § 404.1521. The mere fact that a condition has been acknowledged with a medical diagnosis does not in itself equate to a finding of disability. *See, Key v. Heckler,* 754 F.2d 1545, 1549-1050 (9th Cir. 1985); *Young v. Sullivan,* 911 F.2d 180, 183-184 (9th Cir. 1990). The ALJ's finding that Bunnell's IBS did not result in any significant work-related functional limitations was based on substantial evidence in the record.

### B. Disc Protrusion

Bunnell asserts the ALJ improperly assessed her disc protrusion as not severe. Dr. Ramsthel noted in his letter of August 30, 1991, that Bunnell had a history of back pain. Bunnell had a CT scan in 1989 which revealed a small disc protrusion. However, Dr. Ramsthel noted it "failed to reveal any serious difficulties." Tr. 341. Dr. Ramsthel referred her to specialists who all agreed there was little anatomical reason for the back pain, and it was due to a strong functional overlay. Tr. 226. He noted in his letter of January 10, 1995, that her chronic back pain was treated with exercises, a brace and muscle relaxants. Tr. 341.

The ALJ noted there was no evidence of ongoing problems related to the disc protrusion during the enclosed period. He further noted Bunnell was treated briefly with the pain medication Darvocet for back pain following her motor vehicle accident, but there was no evidence of further treatment for it. Bunnell argues she testified in 1996 that she takes pain pills at night, continued to

complain of back pain to physicians during the enclosed period, and had no insurance to pay for treatment.  The record does not indicate she was prescribed treatment for her disc protrusion for which she was unable to pay.   The medical record does show that Dr. Ramsthel prescribed medications during the enclosed period to treat her gastrointestinal problems, hypertension, and fibromyalgia symptoms.  Tr.  345-346.  Presumably she was able to afford these medications or received assistance paying for them.  Bunnell's testimony in 1996 that she took three pain pills at night does not address the enclosed period.  Dr. Harvey, a state agency examining specialist, was unable to substantiate Bunnell's subjective complaints of pain in 1993.  Tr.  334-336.  The nonexamining state agency physician could find no evidence to support a finding of severe impairment for disc protrusion.  Tr. 253.  Bunnell's treating physician and specialists could not find a physical basis for her complaints and agreed there was a strong functional overlay to her complaints.  Tr.  225, 337, 341.

The ALJ found there were no significant work-related functional limitations from the disc protrusion.   The ALJ properly assessed her impairment of disc protrusion as not severe based on substantial evidence in the record.

### C. Obesity

Bunnell argues the combined effects of her Somatoform Disorder, disc protrusion, and obesity "render all of these impairments severe." Pl.'s Br. at 18.  The ALJ noted her examination by Dr. Harvey, which was during the enclosed period, indicated her height was just under five feet seven inches, and her weight was one hundred ninety-four pounds.  Dr.  Harvey noted Bunnell was somewhat obese, and her gait, stance, heel-toe walking, bounce and coordination were normal.  He also noted her ability to go from sitting to standing was normal as was her range of motion.  Tr. 334-

336. Dr. Ramsthel noted in 1991 that she needed to lose weight and in January, 1995, noted she was overweight. Tr. 225, 343. He does not describe Bunnell as obese in his medical notes until August, 1995, which is after the enclosed period. Tr. 337. Dr. Ramsthel also does not describe any limitations related to her obesity. The ALJ found there were no work-related functional limitations due to her obesity. His finding that her obesity was not severe is based on substantial evidence in the record.

### D. Fibromyalgia

Bunnell asserts the ALJ erred by not finding her fibromyalgia an impairment. Dr. Ramsthel noted Bunnell had a "positive jump sign" on her back in April, 1993, and stated he was "impressed that this lady has fibromyalgia." Tr. 347. In his January 1, 1995, letter to Pacific Care he described her medical history. Dr. Ramsthel noted she had chronic back pain treated with exercises, brace and muscle relaxants, but did not mention fibromyalgia. Tr. 341. He wrote to the state agency in August 25, 1995, and stated, ". . . this patient has considerable functional overlay, but also some findings of fibromyalgia. . ." Tr. 337. The ALJ noted, "there is no evidence claimant exhibited the minimum tender points required under the American College of Rheumatology diagnostic criteria for fibromyalgia. Fibromyalgia is not established as a medically determinable impairment in this case." Tr. 715.

Bunnell argues the ALJ should have further developed the record if he was unclear about Dr. Ramsthel's diagnosis. However, Bunnell bears the burden of proving she has an impairment, and how severe the impairment is. 20 C.F.R. § 404.1512; *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001). An ALJ's duty to further develop the record is triggered by " ambiguous evidence or by the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence."

*Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).  The medical record in this case is adequate to make a determination.  The ALJ must resolve any conflicts in the medical evidence. Whether or not the ALJ specifically found the diagnosis of fibromyalgia supported by the record, he made the determination of the severity of her physical condition based on the degree to which her functioning was limited.   The ALJ's determination was based on substantial evidence in the record.

### E.  Other Impairments

The remand order from this court directed the ALJ to consider whether Bunnell's other impairments, including depression, were medically severe.  The ALJ noted Bunnell was diagnosed with chronic depression by Dr. Ramsthel in May, 1996, and was treated with Zoloft.  Tr.  715.  The ALJ further noted Dr. Ramsthel referred to chronic depression in a letter of August, 1995.  However, as the ALJ correctly notes, there is no medical evidence of treatment or diagnosis for depression during the enclosed period.  Dr. Glaus, a state agency consultant, diagnosed Undifferentiated Somatoform Disorder in December, 1990.  Tr.  201-204.  The expert psychologist, Dr. Davis, and expert psychiatrist, Dr. McDevitt testified in 2000 and 2005, respectively.  Tr.  482, 846.  Both medical experts (ME) agreed with Dr. Glaus' diagnosis and neither diagnosed or found depression. The ALJ found depression was not a medically determinable impairment during the enclosed period. The ALJ's finding is based on substantial evidence in the record and is not challenged directly by Bunnell.

The ALJ discussed Bunnell's foot problems and noted she claimed in September, 1996, that her foot problems began five months previously.  This is after the enclosed period.  The ALJ found her foot problems were not a severe impairment.  Tr.  715.  This finding is not challenged by Bunnell.

Bunnell argues the ALJ failed to properly address the effect of the combination of her impairments. The ALJ noted in his opinion he was considering the effects of all her ailments. He found Bunnell's ailments either not medically determinable impairments or not severe impairments. The ALJ further noted his findings regarding Bunnell's impairments were consistent with the testimony of Dr. Rullman. Dr. Rullman, a ME, testified at the 2000 hearing that there was no evidence of physical impairment during the enclosed period. Tr. 470. The ALJ found that Bunnell had Undifferentiated Somatoform Disorder, and that it was a severe impairment. Bunnell agrees with this finding. Individuals with this disorder have complaints that cannot be adequately explained by a general medical condition, or, if there is a general medical condition, the complaints are more severe than can be explained by objective findings. The ALJ's assessment of Bunnell's impairments was based on substantial evidence in the record. Any error he may have made in describing her combined limitations is harmless as it made no difference in the disability determination. The ALJ's decision will not be reversed for harmless error. *Burch v. Barnhart*, 400 F.3d 676,679 (9th Cir. 2005). The ALJ did not deny Bunnell's claim at step two, he correctly found a severe impairment and continued the sequential evaluation.

## III. Step Three

Bunnell alleges the ALJ erred in failing to find her Undifferentiated Somatoform Disorder met or equaled the criteria in the Listings of Impairments. At step three, the claimant has the burden of showing through medical evidence that her impairments "meet all of the specified medical criteria" contained in a particular listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The listing criteria for mental impairments include ratings of the degree of limitation the impairments impose on the claimant in four broad categories of function, *viz.,* restriction of activities of daily living,

difficulties in maintaining social functioning, deficiencies of concentration, persistence or pace and

episodes of decompensation of extended duration.   These are known as the "B criteria."  If the

claimant can show the requisite degree of limitation in these broad categories, and the other criteria

for a particular listing, then the claimant will be presumed to be disabled and it is unnecessary to

make an RFC assessment.  20 C.F.R. § 404.1520(a)(4)(iii).  To meet the listing for Somatoform

Disorders, the regulations provide the severity must be such that requirements of both parts A and

B are satisfied:

> A.  Medically documented by evidence of one of the following:
> 1.  A history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly; or
> 2.  Persistent nonorganic disturbances of one of the following a) vision; or b) speech; or c) hearing; or d) use of a limb; or e) movement and its control (e.g. coordination disturbance, psychogenic seizures, akinesia, dyskinesia; or f) sensation (e.g., diminished or heightened).
> 3.  Unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury;
> AND
> B.  Resulting in at least two of the following:
> 1.  Marked restriction of activities of daily living; or
> 2.  Marked difficulties in maintaining social functioning, or
> 3.  Marked difficulties in maintaining concentration, persistence, or pace; or
> 4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, subpt. P, app. 1, 12.07.  Dr. Davis, a medical expert, testified at the 2000

hearing.  He opined Bunnell's condition satisfied the requirements of 12.07A(3), but did not meet

the requirements of 12.07B during the enclosed period.  Dr. Davis noted Bunnell had only slight

restrictions of activities of daily living; slight difficulty in maintaining social functioning; seldom

had difficulties maintaining concentration, persistence, or pace; and no episodes of decompensation.

Tr.  490.  Dr. Davis noted further, " undifferentiated somatoform disorder would not by itself be

disabling.  You know, there are many people with fibromyalgia and other associated problems that do work."  Tr.  489.  He noted that although the disorder worsens over time, there was no psychological reason Bunnell could not have returned to her previous work as a mail sorter during the enclosed period.  *Id.*

Dr. McDevitt, a psychiatrist, testified at the 2005 hearing regarding the requirements of 12.07B.  In order to satisfy the requirements of 12.07B there must be marked limitations in two areas.  He opined Bunnell had marked restriction of activities of daily living starting when she used the wheelchair all of the time.  Dr. McDevitt did not find any other marked limitations to satisfy the requirements of 12.07B.  Tr.  848-849.

The ALJ found Bunnell's Undifferentiated Somatoform Disorder did not meet or equal the criteria for listing 12.07.  He relied on the testimony of Dr. McDevitt, which he found generally consistent with the testimony of Dr. Davis, and consistent with the record as a whole.  Bunnell argues lay witness testimony would establish she meets the criteria in the listings under 12.07B(3), difficulties in concentration, persistence or pace.  This court, in its 2001 remand order, noted specifically that the lay witness testimony failed to address Bunnell's functional limitations.  Tr. 742. The lay witness testimony of 2005, as discussed below, is equally unpersuasive.  Bunnell has the burden of establishing that she meets or equals the criteria for a listed impairment based on medical evidence.  *Tackett v. Apfel,* 180 F3d 1094, 1099-1100 (9th Cir 1999).  The ALJ properly found Bunnell's condition did not meet her burden of establishing her condition met or equaled a Listing.

## IV.    RFC Determination

The ALJ determined Bunnell retained the RFC to perform sedentary work.  Bunnell challenges the ALJ's finding that she is capable of any level of work.

**A. Treating Physician**

Bunnell argues the ALJ erred in his assessment of Dr. Ramsthel's opinions and did not properly weigh his opinions regarding her inability to work. The court, in its 2001 remand order, noted

> Dr. Ramsthel's opinions, once credited, similarly do not compel this court to award benefits because they do not relate specifically to the relevant time period and are inconsistent as to the onset date. Although he opined as early as 1991 that Bunnell "seems to be disabled" from working due to pain, this opinion is somewhat uncertain and fails to indicate whether that potential inability to work existed for weeks, months, or years. His more definitive August 1995 opinion that Bunnell could not work also does not specifically address the relevant disability period in this case, that is, the time prior to Bunnell's date last insured on December 31, 1994. More troubling is Dr. Ramsthel's 1996 opinion that Bunnell has been unable to work since September 1995, some nine months past the relevant time period for a disability award in this case. This opinion as to the onset date of Bunnell's disability contradicts both his 1991 and August 1995 opinions.

Tr. 745-746.

The ALJ must resolve conflicts in the medical record. *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992). In resolving conflicts, the ALJ may draw reasonable inferences from the evidence. *Gallant v. Heckler*, 753 F. 2d 1450, 1453 (9th Cir.1984). The ALJ determined Dr. Ramsthel's opinion of 1991 was of little weight as it was before the relevant disability period. Tr. 719. He determined Dr. Ramsthel's 1996 opinion that Bunnell was unable to work from September, 1995, covered the time after the enclosed disability period. Although the ALJ did not discuss all six pages of the 1996 form opinion, it is reasonable to infer the ALJ determined the entire opinion covered the time after the disability period. There are no other specific times given on the form. Tr. 419-424. Any failure by the ALJ to address all parts of this opinion are harmless. As this court noted, above, even crediting these opinions as true does not compel an award of disability.

The ALJ also noted the state agency consultants determined in 1994 and 1995 that Bunnell had no severe impairment. Tr. 719. He noted Dr. Ramsthel's opinion of August 25, 1995, contained the specific limitations that Bunnell was unable to stand, lift, walk or carry objects over ten pounds for any period of time. The ALJ found this opinion regarding limitations consistent with a sedentary level of work. *Id.* He also found Dr. Ramsthel's statement in the same opinion that Bunnell could not work for any length of time "involves vocational issues of which he has no expertise." *Id.*

Social security regulations specify that the most weight is given to the opinions of treating physicians, followed by examining physicians, and the least amount of weight is given to nonexamining experts. *Holohan v. Massanari*, 246 F.3d 1195, 1201-1202 (9th Cir. 2001). However, the determination of whether a claimant meets the statutory definition of disability is the responsibility of the Commissioner. 20 C.F.R. § 404.1527(e). An ALJ can reject a treating physician's opinion that is controverted if he makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)(citations omitted). The ALJ resolved the seemingly contradictory opinions of the long term treating physician in a reasonable way, with specific reasons based on substantial evidence in the record. If the evidence reasonably supports the ALJ's decision it must be upheld. *Matney v. Sullivan*, 981 F.2d at 1919.

**B. Credibility**

Bunnell alleges the ALJ improperly assessed her credibility. The ALJ must assess the credibility of the claimant regarding the severity of symptoms only if the claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Bunnell has a medically

determinable impairment which could produce her symptoms.  When there is an underlying

impairment and no evidence of malingering, an ALJ may discredit a claimant's testimony regarding

the severity of symptoms only by providing clear and convincing reasons based on specific findings.

*Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  When making a credibility evaluation, the ALJ

may consider objective medical evidence and the claimant's treatment history as well as any

unexplained failure to seek treatment or follow a prescribed course of treatment.  *Smolen v. Chater*,

80 F.3d at 1284.  The ALJ may also employ ordinary techniques of credibility evaluation, such as

the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other

statements by the claimant that appear to be less than candid.  *Id., See also* SSR 96-7p.

The ALJ found many inconsistencies in Bunnell's testimony.  As noted above, Bunnell

testified at the 2005 hearing she spends half the day in the bathroom and this was continuous from

1989.  Tr.  825.  This statement is inconsistent with her report to the gastroenterologist in 1995 that

Prilosec had caused a cessation of diarrhea.  Tr.  411.  It is also inconsistent with her testimony

regarding vomiting.  She testified in 1996 she vomited from one to four times a week  Tr.  58.  This

court noted previously there is no mention of the need to spend half the day in the bathroom in any

medical notes or in the 1996 testimony of her sisters and husband. Tr.  745.

As noted by the ALJ, Bunnell testified in 1996 she had foot problems for eight years, yet, in

the same year described having foot problems for only five months to her orthopedist.  Tr. 44, 416.

The ALJ also noted she testified in 2005 she did not babysit for her granddaughter during the

enclosed period.  However, Dr. Ramsthel noted in August, 1992, she should swear an aluminum

cage over a cut finger to protect it "during daylight hours of childcare. Tr. 348. Dr.  Ramsthel noted

in April, 1993, that Bunnell reported being tired and under stress taking care of her granddaughter. Tr. 347.

The ALJ also reviewed her testimony regarding her wheelchair use. Bunnell testified in 2005 she could not walk and had used a power wheelchair since 1989. Tr. 717, 825-826. Bunnell's sister testified that in 1994, Bunnell could walk a half-block and sweeping or vacuuming wore her out. Tr. 67-68. Dr. Ramsthel stated she needed a wheelchair for travel in 1991. In 1994, Dr. Ramsthel indicated he had not prescribed a wheelchair, but told her she might need one in the future. Dr. Benz prescribed a wheelchair in 1996, around the time of treatment and surgery on her tibial tendon. Dr. Benz's notes indicate Bunnell was healing slower than expected from the surgery because she reported difficulty staying off her feet. Dr. Benz noted she owned a barbershop and cleaned it all the time. Tr. 416. Bunnell's physical therapist noted in 1997 that Bunnell was no longer using a wheeled walker, her limping was resolved, and she could be on her feet half a day or more without much discomfort. Tr. 581.

In addition to objective medical evidence and the claimant's treatment history, the ALJ may also consider compliance with treatment and the effectiveness of medications. *Smolen v. Chater*, 80 F.3d at 1284. The ALJ noted that despite complaints of severe pain, she had very little treatment for it besides a 1993 prescription for Elavil. Tr. 718. Bunnell has a history of taking medications to control other conditions, such as hypertension, and it was reasonable for the ALJ to infer she was also capable of acquiring prescribed medications for pain if needed.

In assessing credibility, the ALJ may also consider the claimant's daily activities, work record and the observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Smolen v. Chater,* 80 F.3d at 1285. As noted above, the ALJ discussed

evidence regarding her babysitting and periodically cleaning the barbershop during the enclosed period.   The ability to perform some household chores may indicate an ability to work.  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); *Curry v. Sullivan,* 925 F.2d 1127, 1130 (9th Cir. 1990). On the other hand, a disability claimant does not need to be "utterly incapacitated to be eligible for benefits." *Fair v. Bowen,* 885 F.2d 593, 603 (9th Cir. 1995).  Nevertheless, if the claimant's level and type of activity is inconsistent with her claimed severe limitations, her activities do have a bearing on her credibility.  *Id.*

The Commissioner concedes the ALJ made a harmless error by stating Bunnell testified she did not own or work in a barbershop, which was contrary to the medical notes of Dr. Benz.  Bunnell's testimony regarding the barbershop is confusing.  On December 16, 1996, she testified,

> Q:  You're being treated by - for your leg by Dr. Benz.  It that correct?
> A:  Yes.
> Q:  Whose barbershop do you work in:
> A.  I don't work in it.  My husband owns it.  My name's on the owner–part of the ownership.
> Q:  So when he writes it, it's not Ms. Bunnell, it's a 52-year old female who owns a barbershop.  She cleans up the barbershop all the time.  Is he lying?
> A:  No, I don't do it all the time.  I'm not able to right now because I can't walk. . .

Tr.  522-523.

> Q:  What are - when , when you're able to do it, what are your duties in the barber shop?
> A:  I would dust a little bit and clean out the toilets.  'Cause I couldn't sweep or anything of that other kind of stuff.
> Q:  Do you, do you get paid for that?
> A:  No.  My husband owns it, so no.

Tr.  524.  The ALJ noted the inconsistency between the medical notes of Dr. Benz describing her clean up work in barbershop and her testimony.  Her testimony is that in 1996 she no longer cleans at the barbershop.  We agree with the Commissioner that any error the ALJ made regarding the

barbershop testimony is harmless.  It was only one of the reasons given by the ALJ in his credibility assessment.  The ALJ gave clear and convincing reasons for rejecting Bunnell's assertions regarding her inability to do even sedentary work.  One incorrect reason does not invalidate the entire credibility finding.  *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d at 1197.  The ALJ's duty is to assess credibility and he did so based on substantial evidence in the record.

### C.  Lay Witness Testimony

Bunnell alleges the ALJ improperly assessed the testimony of her husband, Glen Bunnell, sisters Frances Doyle and Darlene Connell, and a written statement from Faith Connell.  Friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition.  *Dodrill v. Shalala*, 12 F.3d at 918-919.  Such testimony cannot be disregarded without comment.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir 1996).  If the ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness.  *Id.*  Inconsistency with medical evidence is one such reason.  *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir.2001).

This court noted in its 2001 remand order that the testimony of Bunnell's husband and sisters described physical limitations that did not necessarily preclude Bunnell from performing sedentary work. Tr.  744.  The ALJ discussed the witness testimony.  Tr.  717-718. He noted Darlene Connell testified in 1996 that Bunnell had problems walking very far, was slow, would drop things, had crying spells, seemed in pain, and vomited every day.  In her 2005 testimony, she stated Bunnell got a wheelchair sometime in the 1990's, had vision problems and could not use a directory.  The ALJ noted Ms. Connell stated in her 2005 written report that Bunnell goes to church but cannot walk to and from the restroom without help.  He noted Frances Doyle had testified in 1996 that Bunnell

could walk about half a block, had arm pain, dropped things, had crying spells and vomited nearly every day. The ALJ noted Glen Bunnell testified in 1996 his wife had trouble walking, dropped things due to arm pain, used a wheelchair occasionally, was nervous, tired easily, and had crying spells. He testified in 2005 that he did most of the care for their granddaughter in 1993. Bunnell's husband also testified she was prescribed a wheelchair in the late 1980's and spent half of her day in the bathroom.

The ALJ found the witnesses statements regarding Bunnell's conditions inconsistent with the medical record. He noted there was no medical evidence to support the testimony that Bunnell had difficulty with dropping things or arm weakness. Her examinations and reflexes during the enclosed period were normal. The ALJ also noted Bunnell was not treated for depression during the enclosed period and there is no record of crying spells. He further noted the medical evidence regarding Bunnell's need and use of a wheelchair, discussed above, was inconsistent with the witnesses' testimony. The ALJ also noted Glen Bunnell's testimony regarding babysitting was inconsistent with Dr. Ramsthel's treatment notes.

The Commissioner concedes the ALJ did not address every statement from the witnesses' testimony, but asserts this is harmless error as it does not resolve the basic inconsistencies noted by the ALJ. Bunnell cites the 2005 forms, apparently modeled on the Part B criteria in the Listings, that were completed by Glen Bunnell, Frances Doyle, Faith Connell, and Darlene Connell. She argues these are significant, should be credited as true, and negate the ALJ's RFC determination. The ALJ addressed the 2005 statement by Darlene Connell. Tr. 717. He addressed the 2005 testimony of Glen Bunnell regarding his wife's wheelchair use, time spent in the bathroom, and childcare. Mr. Bunnell's 2005 form additionally notes his wife's pain, and depression. Tr. 796-803. The ALJ

addressed Ms Doyle's 1996 testimony.  Her 2005 form notes she only saw Bunnell once or twice a month during the enclosed period.  Tr. 788.  She notes her crying spells once or twice a week, pain, anxiety, mobility problems, arm numbness, and weakness.  Tr. 788-796.  Faith Connell's written form does not state her relationship to Bunnell or how often she saw her during the enclosed period.  Tr. 812.  She notes Bunnell's mobility problems, wearing braces on her legs, and using a wheelchair at church.  Faith Connell also noted reading problems requiring eye surgery, limited social interactions, and that Bunnell takes nerve pills and is easily upset.  Tr. 812-819.

The ALJ noted specific inconsistencies in the testimony of Bunnell's husband and sisters with the medical record, which is a legitimate reason for not finding their testimony entirely credible.  We agree with the Commissioner that the additional written forms from 2005 do not change the inconsistencies.  The written statements by the witnesses are also not consistent which each other.  While Bunnell's husband noted a moderate limitation in concentration, persistence or pace, Bunnell's sister noted an extreme limitation.  Tr. 798, 806.  The form submitted by Faith Connell does not state how often she saw Bunnell during the enclosed period.  The ALJ properly assessed the lay witness testimony and his RFC of sedentary work not inconsistent with much of their testimony regarding Bunnell's limitations.

Bunnell also argues the ALJ erred in developing her RFC by failing to conduct a function by function analysis of her abilities.  However, the ALJ determines an RFC based upon limitations for which there is a record.  "Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary.  *See* SSR 96-8p."  *Bayliss v. Barnhart,* 427 F.3d 1211,1217 (9th Cir. 2005).  The ALJ determined Bunnell's RFC based on substantial evidence in the record.

### V.    Step Four Determination

Bunnell argues the ALJ erred in finding she could return to her past relevant work as a mail room sorter because he did not complete a functional analysis of her capabilities and failed to compare them with the requirements of her past work as required by SSR 82-62.  In determining whether Bunnell can perform past relevant work, the ALJ may consider either the actual functional demands and job duties of a particular past relevant job as she performed it, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  SSR 82-61.

Bunnell testified she worked as a sorter in the mail room of a marketing clearinghouse.  Tr. 110.  She testified she sat at a table and sorted checks by zip code, and sometimes sorted coupons. Tr.  526.  Bunnell would carry the envelopes in a tray to the mail room.  Tr.  110.  The most she carried or lifted was ten pounds.  *Id.*  She sometimes used the postage machine.  Bunnell stated she walked for one hour, stood for one hour and sat for six hours, off and on.  *Id.*

The ALJ determined she could perform sedentary work of sitting up to six hours, walking or standing for up to two hours, and lifting no more than ten pounds.  The ALJ noted Bunnell's past relevant work as performed did not require the performance of tasks precluded by her functional capacity.  The ALJ cited her testimony regarding her performance of her past relevant work.  "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work."    SSR 82-62 * 3.  Any omission by the ALJ regarding a functional analysis is harmless as he relied on Bunnell's description of her past relevant work.  The

ALJ's decision that Bunnell could perform her past relevant work is based on substantial evidence in the record.

## CONCLUSION

Based on the foregoing, the ALJ's decision that Bunnell does not suffer from a disability within the meaning of the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

DATED this _____1st_____ day of May, 2007.


  /s/ Garr M. King_____
Garr M. King
United States District Judge